UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOLIVAR BENABE, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 13 C 1436 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Petitioner Bolivar Benabe's *pro se* motions for reconsideration and clarification of this Court's order denying his petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and his motion to quash the indictment. (R. 8, Mot. Clarify; R. 9, Mot. Quash; R. 11, Mot. Reconsider.) For the reasons set forth below, Petitioner's motions are denied, and this case is dismissed with prejudice.

## BACKGROUND

The relevant facts relating to Petitioner's criminal conviction are set forth in a pair of opinions by the Seventh Circuit Court of Appeals, *see United States v. Benabe*, 654 F.3d 753, 757 (7th Cir. 2011); *United States v. Morales*, 655 F.3d 608 (7th Cir. 2011), and several by this Court, *see, e.g., United States v. Delatorre*, 572 F. Supp. 2d 967 (N.D. Ill. 2008); *United States v. Delatorre*, 522 F. Supp. 2d 1034 (N.D. Ill. 2007); *United States v. Delatorre*, 508 F. Supp. 2d 648 (N.D. Ill. 2007); *United States v. Delatorre*, 438 F. Supp. 2d 892 (N.D. Ill. 2006). The Court repeats the facts here only as they pertain to the Petition and the instant motion to reconsider.

Petitioner was one of sixteen individuals indicted by a federal grand jury on various racketeering-related charges in 2006. Petitioner and his codefendants were members of the

Aurora Deuces, the Aurora, Illinois chapter of the Insane Deuce Nation street gang. Petitioner was the third-highest ranking leader in the Aurora Deuces and, because the top two leaders were incarcerated, Petitioner was the de facto head of the gang. Petitioner was charged with racketeering conspiracy (Count One), and narcotics conspiracy (Count Nine).[1]

In an effort not to overwhelm the jury, and due to the logistical challenge of trying so many defendants in a single courtroom, this Court severed the case into two trials. Petitioner was tried with the alleged leaders of the gang. On April 21, 2008, after a two-month trial and more than two weeks of deliberation, a jury convicted Petitioner of participating in a racketeering conspiracy (Count One) and a narcotics conspiracy (Count Nine). On January 23, 2009, this Court sentenced Petitioner to life in prison on Count One and one year of incarceration on Count Nine, to be served concurrently, and imposed a $2,500.00 fine.

On January 27, 2009, Petitioner filed his notice of appeal challenging his conviction. The Seventh Circuit affirmed his conviction on August 18, 2011. *United States v. Benabe*, 436 F. App'x 639, 660-62 (7th Cir. 2011); *Benabe*, 654 F.3d at 757.[2] Petitioner filed a petition for writ of certiorari with the Supreme Court on February 21, 2012, and that petition was denied. (R. 1, Pet'r's Mot. at 2); *Benabe v. United States*, 132 S. Ct. 1612 (2012).

Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2255 on February 18, 2013, (R. 1, Pet.), and the Court denied his petition on February 28, 2013, (R. 4, Min. Entry). In its order, the Court stated:

---

[1] Petitioner was also charged with felon-in-possession of a firearm (Count Fourteen) and possession of a firearm that had an obliterated serial number (Count Fifteen). The Court granted Petitioner's motion to sever those two charges pursuant to Federal Rule of Criminal Procedure 14(a), however, and ordered a separate trial to be held for those two charges. *Delatorre*, 522 F. Supp. 2d at 1042-44. These two counts were later dismissed by the Government.

[2] The Seventh Circuit also affirmed the convictions of Petitioner's codefendants.

> After a careful review of Petitioner's motion pursuant to 28 U.S.C. Section 2255, said motion is denied with prejudice for the following reasons. The trial record and direct appeal opinion, *U.S. v. Benabe*, 654 F.3d 753 (7th Cir. 2011) confirm that said petition fails to assert any valid, non-waived constitutional error. The defendant received a fair trial and sentence while represented by *two* competent trial counsel. Defendant's own misguided lack of cooperation with his trial counsel did not result in any prejudicial, constitutional error at trial. For all these reasons, the Court declines to issue a certificate of appealability in this case.

(*Id.*) Petitioner now moves the Court to clarify its denial of the Petition. (R. 8, Mot. Clarify.) Petitioner's motion requests the Court to make findings of fact and law in accordance with Federal Rules of Civil Procedure 52(a) and 54(b). (*Id.* at 1.) Specifically, Petitioner presents 45 proposed findings of fact and requests that the Court either adopt the proposed findings or hold an evidentiary hearing on those matters. (*Id.* at 2-9.) Petitioner additionally moves the Court to quash the indictment pursuant to Federal Rule of Civil Procedure 12(b), (R. 9, Mot. Quash), and to reconsider its denial of the petition pursuant to Federal Rules of Civil Procedure 59(e) and 52(a), (R. 11, Mot. Reconsider).

A few days after his original filing, Petitioner filed a motion to supplement his petition. (R. 6, Mot. Suppl.) The motion was timely filed pursuant to the mailbox rule, but by the time it arrived to the court, this Court had already denied the petition. The Court subsequently denied Petitioner's motion to supplement in light of the final order already entered. (R. 7, Min. Entry.) Much of the substance of the motion was redundant with the petition. Nevertheless, for the sake of completeness, the Court will briefly address any non-redundant arguments in its findings here.

## LEGAL STANDARDS

Section 2255 allows an incarcerated prisoner to request his sentence be vacated on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

3

28 U.S.C. § 2255. "[R]elief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal quotation marks omitted)).

Rule 52(a) requires a court to find facts and make conclusions of law on certain matters, and under Rule 52(b), a party may move a court to amend its findings or make additional findings. Fed. R. Civ. P. 52. Rule 59(e) "enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). It is well-settled that it is improper to use a post-judgment motion "to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) (quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)); *see also United States ex rel. Russo v. Att'y Gen. of Ill.*, 780 F.2d 712, 715 n.4 (7th Cir. 1986) ("Rule 52(b) and Rule 59 motions may not be used to relitigate issues or to present the party's case under a new legal theory; rather these motions are intended to correct manifest errors of law or fact or to present newly-discovered evidence.").

## ANALYSIS

### I. Petitioner's Motion for Clarification

Petitioner's first post-judgment motion requests that the Court adopt 45 proposed findings of fact and conclusions of law in accordance with Rule 52(a). (R. 8, Mot. Clarify.) The Court declines to do so, as most of the statements are mischaracterizations of the issues or

irrelevant to the Petition. In the alternative to adopting Petitioner's proposed findings, he requests an evidentiary hearing. (*Id.* at 9.) To the extent Petitioner seeks written findings, the Court briefly sets forth below the reasons for its denial of his petition. As to the proposed findings of fact and conclusions of law, however, Petitioner's motion for clarification (R. 8) is denied. The Court also denies Petitioner's request for an evidentiary hearing; none of the issues he raised in his petition require an evidentiary hearing to resolve.

In his petition, Petitioner raised nine grounds on which this Court should vacate his sentence. He contended that: (1) he did not receive the trial transcripts in sufficient time to prepare his section 2255 petition; (2) he received ineffective assistance of counsel at trial and on appeal; (3) the jury's special verdict form was insufficient to establish all the elements of a RICO violation; (4) the jury instructions were misleading and incorrect; (5) the display of firearms at trial was prejudicial and in violation of the Sixth Amendment; (6) the trial court made improper "secret deals" with the Government; (7) the trial court deprived Petitioner of his right to a public trial; (8) the trial court allowed the jury to be tainted; and (9) the trial court incorrectly instructed the jury as to the elements of a RICO violation. (R. 1, Ex. 1, Pet. Suppl.)

### A. Petitioner had sufficient time to prepare his section 2255 petition (ground one)

Petitioner urged this Court to recognize his *pro se* status and grant him leniency in considering his petition, (R. 1, Ex. 1, Pet. Suppl. at 1), which the Court certainly did and continues to do in ruling on his instant motions. Petitioner argued that he had insufficient time to complete his section 2255 petition because he only received the trial transcripts four months prior to the deadline to file his section 2255 petition. (*Id.* at 2.) This argument is unavailing, however, as Petitioner did timely file his petition. The Seventh Circuit has held that delay in obtaining a transcript does not excuse an untimely petition. *Lloyd v. Van Natta*, 296 F.3d 630,

5

633-34 (7th Cir. 2002). Petitioner's absence at his trial may make his need for transcripts more critical, but even habeas petitioners who were tried *in absentia* have not been granted equitable tolling based on delayed access to transcripts. *See, e.g., Heilman v. Hardy*, 849 F. Supp. 2d 796, 801 (C.D. Ill. 2012). At any rate, Petitioner timely filed his petition, as well as a motion to amend his petition, so he was not prejudiced by the delay in receiving the transcripts.

### B. Petitioner received effective assistance of counsel at all stages of trial and on appeal (ground two)

Petitioner argued that he received ineffective assistance of counsel at trial and on appeal. (R. 1, Ex. 1, Pet. Suppl. at 3-6.) Because Petitioner had the same attorney at trial and on appeal, he was not subject to procedural default for failing to raise his ineffective assistance claim on direct appeal. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *United States v. Hall*, 35 F.3d 310, 316 (7th Cir. 1994)). To establish ineffective assistance of counsel, however, Petitioner needed to show that his counsel was deficient and that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). A failure to establish either element would doom Petitioner's claim. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)). Habeas petitioners must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and the Court must resist any temptation to "take up the role of the 'Monday morning quarterback,'" *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

In Petitioner's original filing, he argued that his counsel was ineffective due to their failures to object to the subsequent seven grounds Petitioner provided for habeas relief. (R. 1, Ex. 1, Pet. Suppl. at 6-34.) Petitioner provided no independent reason for the Court to find that Petitioner's counsel provided ineffective assistance, and Petitioner alleged no facts to support his claim that counsel "abandoned their obligations to effectively represent their client," (*id.* at 6-7).

6

As the Court explains in more depth below, none of the other grounds Petitioner provided for habeas relief had merit independently, nor did they support his ineffective assistance of counsel claim.

In his motion to supplement, Petitioner alleged additional reasons this Court should find his counsel deficient. Unfortunately for Petitioner, all of his assertions of ineffectiveness represented the classic type of "Monday Morning quarterbacking" the Court eschews and were based on pure speculation and conjecture; none of his claims were adequately supported by facts. The Court briefly addresses those claims now.

### 1. Failure to investigate the indictment

Petitioner argued that his attorneys failed to investigate various aspects of the grand jury proceedings and the indictment. (R. 6, Mot. Suppl. at 8.) Petitioner stated that his attorneys "claimed to be looking into [his concerns about the grand jury] [but] in the end they provided no information." (*Id.*) Although counsel should always strive to keep their clients abreast of their efforts, their failure to communicate their findings to Petitioner did not render their assistance constitutionally ineffective. It is likely that counsel did in fact investigate Petitioner's concerns about the grand jury, as they told Petitioner they were, but found them to be unworthy of pursuing. Even if counsel failed to acquire the transcripts or the true bill, as Petitioner requested, Petitioner did not allege any prejudice resulting from these failures; indeed, given the evidence, counsel would have had reason to believe that the Government could re-indict Petitioner if the Court had dismissed the indictment. Failure to investigate the indictment or to communicate the results of that investigation with Petitioner, without any allegation of prejudice, does not constitute a constitutional violation. *See Gant*, 627 F.3d at 682.

### 2. Failure to challenge the search of Petitioner's apartment

Petitioner next contended that his counsel was ineffective because they failed to properly challenge the search of his apartment. (*Id.*) This argument is meritless because Petitioner's counsel *did* move to suppress all evidence seized from Petitioner's apartment. (Tr. R. 383, Benabe's Mot. Suppress.) Petitioner argued that his counsel should have requested a *Franks* hearing with respect to the search warrant. (R. 6, Mot. Suppl. at 9.) To obtain a *Franks* hearing, a defendant must make "a substantial preliminary showing that a 'false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Hoffman*, 519 F.3d 672, 675 (7th Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Whether or not counsel thought they could make the preliminary showing required is a strategic decision that the Court declines to second-guess, *see Harris*, 894 F.2d at 877, and counsel's decision to pursue alternative strategies "falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. Counsel's failure to request a *Franks* hearing did not render their representation ineffective.

### 3. Failure to challenge video and audio tapes

Petitioner argued that his counsel was deficient because they failed to challenge the video and audio tape evidence against him. (R. 6, Mot. Suppl. at 9.) Petitioner contended that counsel should have challenged the tapes because some of them had gaps or malfunctions. (*Id.*) The quality of the tapes would not have been sufficient reason to suppress the evidence, *see, e.g.*, *United States v. Parks*, 100 F.3d 1300, 1306 (7th Cir. 1996), and counsel is not required to raise arguments that are likely to fail, *Rodriguez v. United States*, 286 F.3d 972, 985 (7th Cir. 2002).

Counsel's failure to challenge the tapes on the basis of their quality did not render their representation constitutionally ineffective.

### 4. Failure to call witnesses and question informant

Petitioner argued that counsel failed to call several individuals to testify on his behalf. (R. 6, Mot. Suppl. at 10.) "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) (internal citations omitted). Petitioner's brief argument does not come close to meeting that standard and, without more information, the Court is unable to determine that counsel's decision not to call certain individuals to the stand was not a valid tactical choice. Similarly, Petitioner contended that his attorneys failed to point out that Orlando Rivera, the Government's informant, remained involved in criminal activity, (R. 6, Mot. Suppl. at 11-12), but Petitioner failed to allege how such arguments would have resulted in a different outcome. The Court will not "question the objectively reasonable strategic decisions of counsel." *See Harris*, 894 F.2d at 877 (citing *Strickland*, 466 U.S. at 690). Accordingly, the Court did not find that the absence of the witnesses or counsel's cross-examination of Rivera established ineffective assistance of counsel.

In his motion to supplement, along with the four claims above, Petitioner provided twelve additional reasons his counsel was ineffective. (R. 6, Mot. Suppl. at 13-14.) Each of these reasons lacked any supporting facts or basis on which the Court might question counsel's decision, and eleven of the twelve were single sentences. Further, these reflected Petitioner's disagreement with some of counsel's strategic decisions and essentially asked the Court to "take up the role of the 'Monday morning quarterback,'" *see Harris*, 894 F.2d at 877, which the Court

9

will not do. These statements did not provide any support for Petitioner's ineffective assistance of counsel claim.

Next, the Court addresses the grounds other than ineffective assistance of counsel Petitioner provided for habeas relief, which Petitioner argued also supported his ineffective assistance claim. Because those grounds were also meritless, and because the record showed that Petitioner's counsel competently defended Petitioner before trial, at trial, at sentencing, and on appeal, Petitioner failed to establish ineffective assistance of counsel as a basis for relief.

### C. The jury properly convicted Petitioner of a federal crime (grounds three, four, and nine)

Petitioner's Grounds Three, Four, and Nine seemed to cover the same ground so the Court addresses them together. These grounds were lengthy, unfocused, and full of irrelevant and incorrect statements of law and fact, but the Court has done its best to untangle and attempt to address Petitioner's coherent arguments. The gist of Petitioner's arguments here was that the Government failed to establish the jurisdictional element of the RICO violation alleged in Count One. (R. 1, Ex. 1, Pet. Suppl. at 7.) He contended that the Government failed to present any evidence that any member of the Insane Deuces carried a gun across state lines; thus, "no rational fact-finder could logically piece nor determine together" the required element of jurisdiction, so his conviction must be reversed. (*Id.* at 8-11.) Petitioner argued that his convictions on Count One and Count Nine were due to improper and misleading jury instructions on the jurisdictional element, (*id.* at 15, 20-21, 36), and that the Court had no jurisdiction to order his incarceration, (*id.* at 24).

The second superseding indictment sufficiently alleged that the Insane Deuces was an enterprise engaged in activities that affected interstate commerce, *see United States v. Bailey*, 444 U.S. 394, 414 (1980) (indictments that closely tracked the language of the statute were

10

"undoubtedly sufficient"), as explained in more detail below in regards to Petitioner's motion to quash the indictment. Additionally, the jury instructions informed the jury that to prove a defendant was guilty on Count One, the Government was required to prove beyond a reasonable doubt that the activities of the Insane Deuces would affect interstate or foreign commerce. The jury was then given a thorough definition of interstate or foreign commerce and an explanation of how the Government might establish that element of Count One; this definition came from the Seventh Circuit Pattern Jury Instructions pertaining to 18 U.S.C. § 1962. The Government presented a great deal of testimony that the guns the Insane Deuces possessed and the drugs they distributed affected foreign or interstate commerce, and this evidence was certainly sufficient to establish the *de minimis* connection between the enterprise and interstate commerce that is required by RICO. *See United States v. Espinoza*, 52 F. App'x 846, 849 (7th Cir. 2002) (quoting *United States v. Peterson*, 236 F.3d 848 (7th Cir. 2001)). Contrary to Petitioner's argument, the jury was not required to make any additional finding on the special verdict form to indicate that the Court had subject-matter jurisdiction. The Court concluded that a rational jury would have understood the instructions and the verdict form as to the interstate commerce element of Count One, and that a jury could have found Petitioner guilty of Count One based on the evidence presented at trial.

Petitioner's arguments in Grounds Three, Four, and Nine also failed to establish his ineffective assistance of counsel claim. Reasonable counsel would have declined to object to an indictment that sufficiently alleged all the elements of the RICO charge and to a pattern jury instruction. *See Rodriguez*, 286 F.3d at 985 (counsel is not required to raise arguments that are likely to fail). In any event, any potential failure would not have been prejudicial because the

Government presented sufficient evidence to establish each of the elements of the charges against Petitioner, including the jurisdictional elements.

D.   **The admission of guns was not improper (ground five)**

Petitioner contended that the display of guns before the jury was prejudicial and should not have been permitted pursuant to Federal Rule of Evidence 403(b). (R. 1, Ex. 1, Pet. Suppl. at 25-26.) Petitioner also contended that the display of guns at trial created a question of double jeopardy and violated the Confrontation Clause. (*Id.*) Petitioner contended that he should have been able to "confront those witness[es] who actually were part of [and] arrested with any of those specific guns." (*Id.* at 26.) Petitioner provided no supporting facts, nor did he elaborate on his arguments in a way that would allow the Court to discern his meaning. The guns that were entered into evidence at trial were directly relevant to the charges of the indictment—particularly given the evidence that the Insane Deuces shot rival gang members on numerous occasions—and were not unduly prejudicial within the meaning of Rule 403. This ground for relief did not establish a basis for Petitioner's ineffective assistance of counsel claim because counsel did object to the admission of the firearms, and the Court determined that the guns were admissible. Because the firearms were attributed to the Insane Deuces, the Court could conceive of no violation of the Confrontation Clause or double jeopardy issue. Accordingly, the admission of the firearms at trial did not provide a ground for habeas relief.

E.   **The Court did not err by declining to appoint Petitioner substitute counsel (ground six)**

Petitioner argued that he attempted to alert the Court on several occasions that his appointed counsel was not adequately representing his issues and was making "secret deals" with the Government, and the Court refused to address his concerns. (*Id.* at 26-30.) In fact, at sentencing, the Court acknowledged Petitioner's concerns and stated that it had confidence in his

counsel. The Court stands by that assessment: Petitioner's appointed counsel faced a monumental task in defending him against the complex RICO charges in the indictment. The case proceeded for several years, culminating in a lengthy jury trial, and Petitioner's counsel provided zealous representation throughout. As to Petitioner's argument that his counsel turned against him by informing the Court that Petitioner was being uncooperative, the Court is reminded of the dueling obligations to the Court and to their clients that defense attorneys must balance. Petitioner's counsel balanced those duties well, and the Court had no reason to appoint different counsel.

F. **The Court did not violate Petitioner's right to a public trial (ground seven)**

Petitioner argued that the Court deprived him of his constitutional right to a public trial because his family members were not allowed in the courtroom until after voir dire had been partly completed. (*Id.* at 31-32.) As Petitioner himself noted, the reason family members were not allowed into the courtroom for the first part of voir dire was "because of the lack of seating available . . . until the number of prospective jurors was reduced." (*Id.* at 31.) A trial of this size requires a large venire, and there simply was not enough room in the courtroom for the entire venire and the family members of each of the defendants. The courtroom was opened to the public as soon as it was feasible which, as Petitioner noted, was before the trial began and indeed before the completion of voir dire. None of Petitioner's constitutional rights were violated by this logistical accommodation, and Petitioner's counsel were not deficient for failing to object to a closed courtroom during the first phase of voir dire.

Petitioner additionally argued that his exclusion from the courtroom for the entirety of the jury trial constituted a violation of his constitutional rights. (R. 6, Mot. Suppl. at 15.) Petitioner was excluded from the courtroom during trial because he continued to disrupt the pre-trial

proceedings with loud outbursts about his rights as a sovereign citizen. After several pre-trial proceedings following the same pattern of outbursts, the Court determined that these outbursts would have been prejudicial to Petitioner's co-defendants. The Court carefully considered the Supreme Court's instructions in *Illinois v. Allen*, 397 U.S. 337 (1970), and determined that excluding Petitioner from the courtroom was the best option to protect his rights as well as the rights of his co-defendants. *United States v. Delatorre*, 581 F. Supp. 2d 968, 981-88 (N.D. Ill. 2008). The Court thus gave Petitioner the choice of assuring the Court he would not disrupt the trial or watching the proceedings from the jail via live video stream. Petitioner refused to do either. The Court instructed Petitioner that he would be allowed to return to the courtroom if he assured the Court that he would refrain from disruptive outbursts, but Petitioner never did. The Court minimized prejudice by instructing the jury both during voir dire and at the close of evidence that Petitioner's absence from the trial should not enter into the deliberations in anyway. On appeal, the Seventh Circuit determined that Petitioner had knowingly and voluntarily waived his constitutional right to be present at trial. *Benabe*, 654 F.3d at 769-71 (citing *Allen*, 397 U.S. at 342-43). Upon review of Petitioner's habeas petition, this Court continued to find that it had done everything possible to protect his constitutional right to be present at trial, and that Petitioner had waived that right. His voluntary exclusion from the trial did not constitute constitutional error or a basis for habeas relief.

### G. The jury was not tainted (ground eight)

Petitioner argued that because one of the jurors had a son who was a member of the Insane Deuces, the jury was unfairly tainted during its deliberations. (*Id.* at 33-34.) Petitioner also contended that the Court ignored the issue and that the court reporter deleted some of the juror's statement from the trial transcript. (*Id.* at 34-35.)

14

During voir dire, Juror 79 stated that her son had been a gang member for two years. The Court conducted an extensive voir dire and found that, notwithstanding her son's former gang membership, Juror 79 was not prejudiced and was a fit juror. Defense counsel did not follow up and ask which gang Juror 79's son had been affiliated with, and the fact that Juror 79's son had been an Insane Deuce did not come out until after trial. While it may be possible that a reasonably prudent attorney would have asked this follow-up question, the Court does not need to resolve that question here because the Court concluded that Petitioner was not prejudiced by his counsel's failure to determine what gang Juror 79's son had been in. Juror 79 was questioned repeatedly as to whether she had any bias, and she repeatedly informed the Court that she did not. The Court is generally loath to assume that jurors lie about their impartiality and relies upon a belief that jurors take the Court's questions and instructions seriously. *See United States v. Davis*, 15 F.3d 1393, 1410 (7th Cir. 1994). Rather than ignoring the issue, as Petitioner contended, the Court went to great lengths after the trial to determine whether Juror 79 had tainted the jury, and it determined that she did not. *See, e.g., Delatorre*, 572 F. Supp. 2d at 981-82 (finding, after an evidentiary hearing involving questioning the jury foreperson, that Juror 79 was not biased and did not prejudice the jury). Petitioner did not provide any reason for the Court to now find that Juror 79 was biased, or that she prejudiced the rest of the jury, and the Court was unable to find any support for that argument in the record. In addition, Petitioner provided no reason for this Court to believe that the court reporter altered the transcript, and the Court found that allegation to be completely without merit.

None of the grounds for relief Petitioner provided warranted habeas relief, nor did any of these grounds illustrate that his counsel was constitutionally ineffective. Having set forth its

reasons for dismissing Petitioner's section 2255 motion, the Court now addresses Petitioner's remaining motions.

## II.     Petitioner's Motion to Quash the Indictment

Petitioner's submission styled "Motion To Quash The Indictment, or Counts Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6)" touches on many topics in addition to the Court's jurisdiction, including the introduction of guns at trial, the jury instructions, the verdict form, and whether there was sufficient evidence to convict him. (R. 9, Mot. Quash.) These topics are also covered by Petitioner's other pending motions, and the Court addressed them above in the context of his motion for clarification. Petitioner moves to quash the indictment pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Court does not have subject matter jurisdiction. (*Id.*) The Court denies this motion for several reasons. First, in general, the proper time to move to quash the indictment is before conviction, while the case is still pending. Fed. R. Crim. P. 12(b)(3)(B) ("a motion alleging a defect in the indictment or information" must be made before trial, "but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense"). Second, Federal Rules of Civil Procedure have no bearing on criminal proceedings. Additionally, Petitioner and one of his codefendants, Delatorre, repeatedly made the same arguments about jurisdiction during the criminal proceedings, and the Court issued a written opinion specifically addressing those concerns. *United States v. Delatorre*, No. 03 CR 90, 2008 WL 312647, at *1 (N.D. Ill. Jan. 30, 2008) ("the Seventh Circuit has repeatedly held that district judges always have subject-matter jurisdiction based on any indictment purporting to charge a violation of federal criminal law" (quoting *United States v. Hernandez*, 330 F.3d 964, 977-78 (7th Cir. 2003)) (internal quotation marks omitted)). Petitioner has raised no new fact or

law that would cause this Court to reconsider its jurisdiction to preside over this case. Finally, the indictment sufficiently alleged that Petitioner, as a member of the Insane Deuces, participated in racketeering activities that affected interstate and foreign commerce in violation of RICO. *See Bailey*, 444 U.S. at 414 (1980). Accordingly, Petitioner's motion to quash the indictment is denied.

### III. Petitioner's Motion for Reconsideration

First, Petitioner appears to be seeking findings of fact and conclusions of law explaining the reasons for the Court's summary dismissal of his habeas petition. (R. 11, Mot. Reconsider at 2-3.) Petitioner then raises a multitude of substantive issues, many of which were raised in his original petition, as grounds on which the Court should have granted his petition. (*Id.* at 3-9.) In the alternative, Petitioner requests a certificate of appealability. (*Id.* at 9.)

Prisoners are barred from filing second or successive habeas petitions unless they obtain certification to do so from the court of appeals. 28 U.S.C. § 2255(h); 28 U.S.C. § 2244. A second or successive petition will only be certified if it contains new evidence or a new rule of constitutional law. 28 U.S.C. § 2255(h). If Petitioner does not have permission from the court of appeals to pursue a successive collateral attack, this Court has no jurisdiction and must dismiss the second petition. *United States v. Scott*, 414 F.3d 815, 816 (7th Cir. 2005). "The problem is that the AEDPA does not define 'second or successive.'" *Vitrano v. United States*, 643 F.3d 229, 233 (7th Cir. 2011). Motions to reconsider denials of habeas petitions sometimes must be treated as a second or successive collateral attack. *Gonzalez v. Crosby*, 545 U.S. 524, 531-32 (2005); *Dunlap v. Litscher*, 301 F.3d 873, 875-76 (7th Cir. 2002). In *Gonzalez*, the Supreme Court held "that a procedural argument (say, one about the statute of limitations) raised using Rule 60(b) is not a new collateral attack, but that an objection to the validity of the criminal

conviction or sentence is one no matter how it is couched or captioned." *Scott*, 414 F.3d at 816 (citing *Gonzalez*, 545 U.S. 524). Accordingly, to the extent Petitioner's motion challenges the merits of this Court's dismissal of his petition, the motion is dismissed for lack of jurisdiction. To the extent the motion seeks clarification of the Court's reasons for dismissing his petition, the motion is denied as moot given the first part of this opinion. And because Petitioner failed to raise any valid constitutional claims, the Court denies his request for a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the foregoing reasons, Petitioner's motion for reconsideration of the Court's denial of petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 (R. 11) and his motion to quash the indictment (R. 9) are DENIED. Petitioner's motion for clarification (R. 8) is GRANTED insofar as the Court now issues written findings and conclusions and is DENIED insofar as the motion seeks relief from the Court's previous dismissal of the habeas petition.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: September 12, 2014